```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                    CHARLOTTE DIVISION
                     3:06CV475-MU-02
```

```
CHARLES WILLIAM JOHNSON, )
     Plaintiff,         )
                        )
     v.                 )             ORDER
                        )
R. DAVID MITCHELL, Su-  )
  perintendent of the   )
  Mountainview Correc-  )
  tional Institution;   )
MICHAEL F. EASLEY; Gover-)
  nor of the State of   )
  North Carolina;       )
ROY A. COOPER, Attorney )
  General of the State of)
  North Carolina;       )
JIM PENDERGRAPH, Sheriff )
  of Mecklenburg County; )
  and                   )
WILLIAM F. SUTTON, Char-)
  lotte-Mecklenburg     )
  Police Officer,       )
     Defendants.        )
_____)
```

**THIS MATTER** comes before the Court on an initial review of the purported plaintiffs' civil rights Complaint under 42 U.S.C. §1983, filed November 17, 2006. After careful consideration, for the reasons stated herein, the instant Complaint will be <u>dismissed</u>.

### I. FACTUAL AND PROCEDURAL BACKGROUND

At the outset of this discussion, the Court notes that in

addition to Mr. Johnson, the instant Complaint identifies Christopher O. Gordon and Brad K. Evans as plaintiffs here. Further, In Forma Pauperis Applications were submitted by Mr. Johnson, as well as the other two putative plaintiffs. Oddly, however, the Complaint does not set forth a single allegation relating to either of those proposed plaintiffs; nor are the putative plaintiffs' names mentioned anywhere in the body of the Complaint. In fact, the allegations in the Complaint all relate to matters involving Mr. Johnson.

Equally critically, the Complaint does not contain the signature of either of the putative plaintiffs. Nevertheless, on November 30, 2006, an Order inadvertently was entered by the Clerk of Court, granting all three of the IFP Applications, and directing that $117.00 be deducted, in $10.00 increments, from the inmate trust accounts of all three men. However, inasmuch as Mr. Gordon and Mr. Evans cannot be deemed proper parties to this action, the Clerk's financial Order with be rescinded. Furthermore, Mr. Gordon and Mr. Evans' names will be removed from the docket of this case.

As for the actual claims, the essence of Mr. Johnson's Complaint relates to the named defendants' alleged failure to bring to justice Brian K. Jackson for a violent assault which he reportedly inflicted upon the plaintiff. More particularly, the plaintiff alleges that on or about March 28, 2000, he was

2

viciously beaten, stabbed in the abdomen, spit upon and berated by Jackson in the driveway of Jackson's mother's home. Following the attack, the plaintiff allegedly was able to walk away, but only made it as far as a block when Jackson drove his van (with two passengers inside) up onto the sidewalk and struck the plaintiff.

The plaintiff further reports that a companion who was with him during this incident called for assistance, to which call defendant Officer Sutton and an ambulance responded. The plaintiff and his companion gave statements to defendant Sutton about the incident and identified Jackson and his passengers. The plaintiff also told Sutton that he, in fact, did want to pursue criminal charges against his attacker(s). Interestingly, the plaintiff also reports that after he indicated his desire to pursue charges, he "took the initiative thereby involving [his] rights as it is set forth in Article I, Section 37 of the North Carolina Constitution and the First Amendment to the United States Constitution."

In any event, the plaintiff reportedly was taken to a local hospital, where he was admitted and treated for his injuries. On the following day, the plaintiff was discharged from the hospital, but was then arrested and taken to the Mecklenburg County Jail on unrelated charges which then were outstanding.

While in Jail, the plaintiff allegedly was interviewed by

three detectives, including one from the Charlotte-Mecklenburg Police Department, about his own prior criminal offenses. During that interview, the plaintiff also discussed the attack which he had suffered from Jackson. The Detectives then told the plaintiff that they were familiar with Brian Jackson and at least one of his passengers from the attack; and that they would look into the status of Sutton's investigation of Jackson.

The plaintiff also reports that while he was at the Mecklenburg Count Jail, he observed his attacker, Brian Jackson, in a nearby cell after Jackson had been arrested on a shoplifting charge. In addition, the plaintiff complains that he repeatedly asked certain unidentified Sheriff's Deputies to take him before a State Magistrate so that he could swear out a warrant against Jackson for the assault. However, the plaintiff alleges that all of his requests were denied.

In December 2001, the plaintiff telephoned defendant Sutton and inquired about the status of his investigation. At that time, Sutton advised the plaintiff that his investigation had encountered obstacles which "slowed the prosecution." The plaintiff further reports that during that conversation, Sutton asked him if he did not want to let this matter go unresolved.

The plaintiff also submitted as (Exhibit 7) a Memorandum which he received from defendant Sutton. Such Memorandum, dated September 21, 2002, apparently was in response to another of the

plaintiff's inquiries concerning the status of defendant Sutton's investigation. In that document, defendant Sutton explained that his investigation still was open, but also was stalled. That is, defendant Sutton explained that he had encountered difficulty investigating the subject attack, in part, because he was unable to obtain a signed statement from the plaintiff when he attempted to interview the plaintiff at the hospital on the day after the attack. Defendant Sutton's letter also advised the plaintiff that on the day following the attack, he had tried unsuccessfully to locate Jackson at his mother's home.

Another of the plaintiff's Exhibits reflects that at some point in or around August 2004, he sought permission in the Superior Court of North Carolina to proceed <u>in forma pauperis</u> with a Complaint concerning the matters raised in this Complaint. However, by letter of August 31, 2004, the Honorable Robert P. Johnston advised the plaintiff that his request was denied because it would be pointless to let him proceed since his action was subject to dismissal under the N.C. statute of limitations.

Next, in September 2006, the plaintiff inexplicably filed an inmate grievance at his Prison, complaining about the fact that he was beaten and assaulted by Brian Jackson in March 2000, and that Jackson never was prosecuted for that incident. The plaintiff's grievance alleged that he had been denied access to the courts, and that his right to due process of law was violated.

5

As relief, the plaintiff's grievance sought: a "(1)new trial on all or any of the charges. (2) Dismissal of all or any of the charges. (3) The relief sought by the State pursuant to G.S. 15A-1416. (4) Any other appropriated [sic] relief." Not surprisingly, however, the plaintiff's grievance was rejected on the explanation that his complaints involved a State Court decision and [was] beyond [the] control of [the] D[epartment] O[f] C[orrection]."

Now, the plaintiff has come to this Court with the instant civil rights lawsuit against the above-identified defendants. By way of relief, the plaintiff asks this Court to issue a permanent injunction "concerning conditions of confinement, that the defendant's [sic] acts, policies and procedures deprived the plaintiff of his First, Fourth, Fifth, Sixth, Seventh, Eighth, Eleventh and Fourteenth Amendment rights To The Constitution of the United States or the Constitution pf North Carolina." The plaintiff also asks the Court to declare that the "defendants acted willfully, wrongfully, recklessly and in bad faith." Notwithstanding his obviously strong beliefs to the contrary, however, the plaintiff has failed to state a constitutional claim for relief. Therefore, this Complaint must be <u>dismissed</u>.

## II. <u>ANALYSIS</u>

Other than those allegations against defendant Sutton, the plaintiff has failed to set forth a single allegation against any

6

of the other named defendants.  Nor has he set forth any basis upon which those defendants--Superintendent Mitchell, Governor Easley, Attorney General Cooper or Sheriff Pendergraph--possibly could be held liable to him.  Thus, it goes without saying that the plaintiff's Complaint cannot proceed against those individuals.  See generally Neitzke v. Williams, 490 U.S. 319, 325 (1989).

As for the plaintiff's allegations against defendant Sutton, the undersigned finds that even if this action is not time-barred, the same falls short of stating a constitutional claim for relief.  To be sure, there is no federal statute of limitations for §1983 actions.  Burnett v. Grattan, 468 U.S. 42, 49 (1984).  Thus, federal courts apply the State limitations period for personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 276 (1985).  Here in North Carolina, the applicable limitations period is three years.  Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996).

A review of the plaintiff's Complaint reflects that he became aware that defendant Officer Sutton had stopped pursuing his investigation of Brian Jackson as early as December 2001, and certainly no later than September 2002 when he received defendant Sutton's Memorandum.  Consequently, since the plaintiff did not bring this action until November 2006, it appears to be time-barred.

Moreover, although the plaintiff has claimed that several of his constitutional rights were violated by defendant Sutton's failure to complete his investigation and secure charges against Jackson, such allegations could, at most, sound in negligence. However, it is well-settled that mere negligence is not enough to state a constitutional claim for relief. See generally Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

Finally, to the extent that the plaintiff somehow is attempting to obtain collateral post-conviction review under his Complaint, see Exhibit 4 of Complaint, pp 37-44 (challenging propriety of plaintiff's conviction and sentence), such attempt cannot be countenanced in this civil rights action. That is, should the plaintiff desire to pursue federal collateral review of his North Carolina conviction and sentence, he must do so in a separate action under 28 U.S.C. §2254.

**NOW, THEREFORE, IT IS ORDERED:**

1. That the Clerk's financial Order of November 30, 2006 (document # 2) is **RESCINDED** as to putative plaintiffs Christopher Gordon and Brad Evans;

2. That the names of Christopher Gordon and Brad Evans shall be **STRICKEN** from the docket of this case, and any funds collected from their inmate trust accounts shall be **REFUNDED**;

3. That Charles William Johnson shall be solely responsible for payment of the entire $350.00 filing fee; and

4. That the plaintiff's Complaint is **DISMISSED** in its entirety, ultimately for its failure to state a constitutional claim for relief. See 28 U.S.C. 1915(A)(b)(1).

**SO ORDERED.**

Signed: February 27, 2007

Graham C. Mullen
United States District Judge